## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **MATTHEW HANEY, as Trustee of the Gooseberry Island Trust**<br>            Plaintiff<br><br>v.<br><br>**TOWN OF MASHPEE, and JONATHAN FURBURSH, WILLIAM A. BLAISEDELL, SCOTT GOLDSTEIN, NORMAN J. GOULD, BRADFORD H. PITTSLEY, and SHARON SANGELEER, as they are members and are collectively the ZONING BOARD OF APPEALS OF THE TOWN OF MASHPEE**,<br>            Defendants | **C.A. No. 1:21-cv-10718-JGD** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### I.      INTRODUCTION

Plaintiff, Matthew Haney, ("Plaintiff" or "Haney") complains to this Court based upon a set of land use determinations made by the Town of Mashpee and the Zoning Board of Appeals of the Town of Mashpee (collectively "Defendants" or "Town").

Despite the impleading of the Plaintiffs' less than viable federal due process claim under 42 U.S.C. § 1983, the inescapable crux of the Plaintiff's claims is M.G.L. c. 40A.

Plaintiff has extensively litigated his Land Use claims before the Massachusetts Department of Environmental Protection, the Massachusetts Land Court and the Massachusetts Appeals Court.  Not having obtained the results he sought through those earlier actions, he re-pleads his claims as regulatory taking claims before this Court.

## II.    SUMMARY OF FACTUAL ALLEGATIONS

Plaintiff Matthew Haney is the trustee of the Gooseberry Island Trust ("Gooseberry"). Gooseberry is the owner of real property consisting of a 4+ acre island in Popponesset Bay in Mashpee, Barnstable County, Massachusetts, more particularly described in Land Court Plan 25209A ("Subject Property"). In 2011, Robert J. Nelson, Jr. conveyed titled to the Subject Property to Robert D. Emmeluth as trustee of Gooseberry Island Trust. Matthew Haney succeeded Emmeluth as trustee.  The property is vacant.  Remnants of a foundation of a hunting and fishing cottage are shown on the Land Court Plan 25209-A and are still present on the property.  (Compl. at ¶¶ 8-23).

The Island is separated from the mainland by a narrow channel that is approximately 40 feet wide at mean low water and 80 feet wide at mean high water.  (Id. at ¶ 25).

Plaintiff brings two claims for relief.  Count I is a claim under 42 U.S.C. § 1983 that the Town has engaged in a regulatory taking of the Subject Property in violation of the Fifth and Fourteenth Amendment to the United States Constitution. Count II is a claim of Inverse Condemnation under the Massachusetts Constitution and State Laws.

Plaintiff's Complaint includes a significant volume of decades or even century old background which is immaterial to the claims pled and is not included in this summary.[1]

---

[1] For example, Plaintiff alleges, pursuant to Chapter 134 of the Acts of 1908, the Massachusetts General Court authorized Plaintiff's predecessor in title, Theodore H. Tyndale, his associates and assigns to construct a bridge from the mainland at the end of Punkhorn Point Road to the Subject Property ("1908 Act").  Pursuant to the 1908 Act, the Board of Harbor and Land Commissioners Court issued a license to Theodore H. Tyndale to construct a bridge from the mainland at the end of Punkhorn Point Road to the Subject Property ("1909 License"). This bridge to Popponesset Island was constructed pursuant to the Act and, at this time, over 70 homes have been constructed on the approximately 45 acres of land that constitutes Popponesset Island (i.e., about one house for each 0.64 acres of total land). The overwhelming majority of home lots on Popponesset Island have road frontage.  (Id. at ¶¶ 35-38). The Defendant ZBA has approved numerous special permits and variances allowing the construction and expansion of single-family houses on Popponesset Island.  (Id. at ¶ 39). The Town of Mashpee through its Conservation Commission has issued numerous authorizations to allowing the construction and expansion of single-family houses including associated septic systems on Popponesset Island.  (Id. at ¶ 41).  The following background paragraphs are immaterial to the Plaintiff's two claims: 10, 11, 12, 13, 14, 15, 16, 17, 42, 43, 44, 45, 52, 53, 54, 56, 57, 70, 71,

Defendants do not include other superfluous and immaterial Complaint allegations which have no bearing on the two claims which were pled.  This includes conclusory allegations[2], legal assertions[3], settlement discussions[4], and attorney-client privileged information[5].

A.    Zoning Classification Applicable to Subject Property

On October 25, 1960, Mashpee Special Town Meeting adopted a zoning bylaw and placed the Property within the R-150 Residence.  (Id. at ¶ 46).  The March 7, 1966, Mashpee Annual Town meeting voted to amended the zoning by-law to require "minimum frontage of one hundred twenty-five (125) feet…. provided that one (1) one-family dwelling and its accessory buildings may be erected on any lot which at the time this by-law was adopted, is separately owned."  (Id. at ¶ 48).  The 1970 Mashpee Town meeting voted to amended the zoning by-law to require: "No building shall be erected except on a lot fronting on a street and there shall be not more than one principal building on any lot."  (Id. at ¶ 50).  As of 1985, the Owner needed a variance to build a house on the Subject Property unless the Owner constructed a bridge and a road to provide frontage.  (Id. at ¶ 55).

---

[2] A court has the authority to strike irrelevant or superfluous allegations.  Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 42 (1st Cir. 2013).  For example, Plaintiff alleges that the May 1978 Mashpee Town meeting voted to add a grandfather provision to the zoning bylaw but that the 1985 Mashpee Town meeting voted to remove it.  (Compl. at ¶¶52-55).  Both paragraphs are irrelevant to the Plaintiff's claims.  **The following paragraphs are irrelevant or superfluous allegations to the Plaintiff's two claims: 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, and 41.**

[3] A court resolving a Fed. R. Civ. P. 12(b)(6) motion to dismiss should begin by separating a complaint's factual allegations from its legal conclusions.  Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 4 (1st Cir. 2011).  For example, Plaintiff alleges in paragraph 47 "[a]fter the adoption of the zoning by-law the Owner had a right to construct at least six houses on the Subject Property."  Again, in paragraph 49, Plaintiff alleges "[a]fter the amendment of the zoning by-law, the Owner had a right to construct one house on the Subject Property unless the Owner constructed a bridge and a road to provide frontage."  **The following paragraphs are purely legal conclusions: 47, 49, 51, 53, 55, 83, 87, 102, 136, 138, 149, 150, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, and 187.**

[4] Evidence of settlement negotiations is generally inadmissible.  Hiram Ricker & Sons v. Students Int'l Meditation Soc'y, 501 F.2d 550, 552 (1st Cir. 1974).  **The following paragraphs are evidence of settlement negotiations: 120, 121, 151, 152, 153, 154, 155, 156, 157, 158, and 159.**

[5] The attorney-client privilege shields communications between the client and the lawyer made for purposes of obtaining legal advice.  In re Grand Jury Subpoena, 909 F.3d 26, 30 (1st Cir. 2018).  Plaintiff includes paragraphs within his complaint specifically asserting what he believes was communicated in an executive session on September 22, 2014 between Town Counsel Patrick Costello and his client the Board of Selectmen.  (See Compl. at ¶¶ 81-82.  **The following paragraphs contain assertions of what Plaintiff believes was said during an attorney-client communication between Town Counsel and his clients: 81, 82, 85, 91, 101, and 123.**

B.      Abutters to Punkhorn Point Road Property and Subject Property

The Mashpee Wampanoag Tribe are abutters to the Punkhorn Point Property and the

Subject Property. On May 23, 2007, the Mashpee Wampanoag Tribe ("Tribe") obtained federal

recognition.  (Id. at ¶ 58).  Subsequently, the Defendant Town of Mashpee entered into

negotiations for the execution of an intergovernmental agreement with the Tribe governing the

relationship between the Town and the Tribe.  (Id. at ¶ 59).  Article 1 of the April 7, 2008, Town

of Mashpee Special Town Meeting, which passed, was a request to "authorize[] the board of

selectmen to enter into an Inter-Governmental Agreement with the Mashpee Wampanoag Tribe

upon such terms and condition as the Selectmen deem advisable and in the best interest of the

Town, or take any other action relating thereto."  (Id. at ¶¶ 60-61).   Article 2 of the April 7, 2008,

Town of Mashpee Special Town Meeting was a request to:

> "see if the Town will vote to authorize the Board of Selectmen to convey, grant and/or release to
> the Mashpee Wampanoag Tribe of Massachusetts (the "Tribe") the Town's title, rights, or interest
> it and to the following described parcels of real property, to file such petitions with the
> Massachusetts General Court as may be necessary to effect this conveyance, grant or release, and
> to execute any and all instruments necessary to convey, grant and for release the Town's title,
> interest or rights, upon such terms and conditions as the Board of Selectmen shall deem to be in
> the interest of the Town; provided, that the Town and the Tribe shall have first executed an Inter-
> Governmental Agreement specifically providing the terms of disposition of the subject title,
> rights and/or interests:.... Parcel Seven: The parcel containing 4.6 acres, more or less, identified
> on Assessors Map 106, located off of Punkhorn Point and Gooseberry Island, currently utilized as
> a Wampanoag Aquaculture/Shellfish Farm site... Parcels Seven and Eight are Wampanoag
> Shellfish Farms located in Popponesset Bay which have, for several years been cultivated,
> maintained and harvested by the Tribe pursuant to licenses and permits granted by the Town. The
> Town has agreed in the Intergovernmental Agreement to convey to the Tribe any right, title or
> interest of the Town in these two parcels for continued aquaculture/ shellfish farm use and/or to
> support steps necessary for these parcels to be taken into trust for this purpose."

(Id. at ¶ 62).  Parcel Seven is the water that surrounds Gooseberry Island/Subject Property and is owned

by the Commonwealth of Massachusetts.  (Id. at ¶ 63). At the April 8, 2008, Town Meeting, the Town

passed Article 2, but Parcel Seven was removed from the list of parcels.  (Id. at ¶ 65). On or about April

4

22, 2018, the Defendant Town of Mashpee signed an intergovernmental agreement ("IGA") with the Tribe.  (Id. at ¶ 66).

Plaintiff alleges that the Town pledged in the intergovernmental agreement to "support all necessary steps to have [Parcel 7] acquired in trust for the Tribe."  Documents sufficiently referred to in the complaint may be considered in evaluating a Rule 12(b)(6) motion to dismiss. Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  The IGA is one such document. The "pledge" that Plaintiff refers to from the IGA states as follows:

> To support the Tribe's acquisition in trust of the parcels of land described in Exhibit A, for the Proposed Uses identified in the Tribe's trust acquisition application dated August 30, 2007, and to undertake all reasonable measures necessary to effect the transfer of the Town's fee interest in and to those parcels identified as Parcels No. 1, 2, and 3 in Exhibit A, including sponsoring an Article(s) for approval by the Mashpee Town Meeting authorizing the transfer of said parcels and to remove certain restrictive covenants from the parcels identified as Parcels Nos. 4, 5, and 8 in said Exhibit A and to convey the Town's interest, if any, in Parcels A and B as identified on Exhibit B, subject to approval by the Mashpee Town Meeting and the execution of any necessary documents. (See Rider A, appended hereto, dated April 22, 2008.) If the Town does not have fee title to Parcels A and B as identified on Exhibit B, it shall support all necessary steps to have those Parcels acquired in trust for the Tribe including any local approvals or state legislation.

(Intergovernmental Agreement By and Between The Mashpee Wampanoag Tribe and The Town of Mashpee, Massachusetts, dated April 22, 2008; attached as Exhibit A).

Robert and Michelle Wolpe (owners of the upland at #84 Punkhorn Point Road) are abutters to the Plaintiff's Punkhorn Point Road property.  See Wolpe v. Haney, 27 LCR 497 (2019). James Atkins Jr. and John Weltman (owners of the upland at #80) are abutters to the Plaintiff's Punkhorn Point Road Property.  Id.  The Town is also an owner of land abutting the Plaintiff's Punkhorn Point Road Property. Id.  There are other parcels abutting the Plaintiff's Punkhorn Point Road Property and land claims which have been the subject of significant litigation involving the above listed parties.  Id.  Indeed, the Land Court action referenced in Plaintiff's Complaint (Compl. at ¶ 86) was ongoing contemporaneous to the Plaintiff's G.L. c. 40A actions, as referenced within the Complaint and as shown through the court records which are within the purview of this motion to dismiss.

C.    Plaintiff's 2013 Application for Variances – *No Bridge Proposal*

The Defendant ZBA is a board established by the Town which pursuant to M.G.L. ch. 40A, 10 and Section 174-95 of the Mashpee Zoning Bylaw has the authority to grant site specific variances to the terms of the Mashpee Zoning Bylaw.  (Compl. at ¶ 69).

On or about August 29, 2013, the Plaintiff filed an application for variances with the ZBA of the following provisions of the Mashpee Zoning Bylaw to enable construction of one single-family dwelling on the Subject Property: (i) Section 174-12- frontage on a street; (ii) Section 174-31 – 150 feet of frontage on a street; and (iii) Section 174-32- unobstructed paved access roadway. (Id. at ¶ 72). On October 9, 2013, the Defendant ZBA held a public hearing on the Trust's application and voted 4 to 1 to deny it.  (Id. at ¶ 73).  The Defendant ZBA filed three separate written decisions on October 22, 2013 with the Town Clerk denying each of the three variances that the Plaintiffs request citing concerns with public safety as no bridge had been proposed.  (Id. at 74).  Plaintiff does not attach the decisions to his Complaint despite their reference therein.  The 2013 G.L. c. 30A Complaint in Emmeluth v. Mashpee Zoning Board of Appeals, et al., BACV2013-579, which includes the referenced ZBA Decisions, is attached hereto as Exhibit B.

D.    Plaintiff's Bridge Proposal

As alleged in the Complaint, on March 14, 2014 to address the Defendant's concerns with public safety and the provision of emergency services, Plaintiff had Vaccaro Environmental Consulting file a Notice of Intent (NOI) application with the Mashpee Conservation Commission, a board established by the Defendant Town, on behalf of the Plaintiff and the SN Trust which are the owners of the land on Gooseberry Island/Subject Property and at the east end of Punkhorn Point Road in Mashpee proposing to construct a modern bridge and driveway in order to provide vehicle access to the island in approximately the same location as that approved in the 1908 Act and 1909 License.  (Compl. at ¶ 75).  The matter was scheduled for a substantive hearing on August 28, 2014.  (Id. at ¶ 76).  The matter was continued a number of times.  (Id. at ¶¶ 78, 89, 92, 94).

The Conservation Commission closed the public hearing on January 8, 2015. (Id. at ¶ 99). On January 22, 2015, the Mashpee Conservation Commission voted to deny the Plaintiff's application without prejudice and, on or about February 11, 2015, the Commission issued an Order of Conditions denying the proposed timber bridge under both the Wetlands Protection Act, M.G.L. c. 131, § 40 and the Mashpee Wetlands Protection Bylaw. (Id. at ¶ 100).

On or about February 12, 2015, the Trusts filed a request for superseding review with the Massachusetts Department of Environmental Protection ("DEP") pursuant 310 CMR 10.05(7)(b). (Id. at ¶ 103). On or about June 30, 2015, the DEP issued a superseding order of conditions denying the proposed timber bridge on the grounds that the installation of sixteen 14-inch diameter piles within salt marsh would destroy 17.1 square feet of salt marsh and that the shading impacts from the bridge decking would have an adverse effect on the productivity of the salt marsh. (Id. at ¶ 104). On or about July 14, 2015, the Trusts requested that the DEP issue a variance from the Wetland Protection Act, and also appealed the DEP's denial superseding order of conditions by requesting an adjudicatory hearing with the Office of Appeals and Dispute Resolution ("OADR") pursuant to 310 CMR 10.05(7)(j)(2). (Id. at ¶ 105).

Plaintiff alleges in his Complaint that he "conferred with the DEP about replacing the proposed timber bridge with a steel bridge" at some point in the process, suggesting such a change would be "permissible." (Id. at ¶¶ 106-108). The Massachusetts DEP found to the contrary. See In the Matter of Gooseberry Island Trust and SN Trust, 2017 MA ENV LEXIS 40 (Attached as Exhibit C). The DEP determined the steel bridge proposal was substantially different than the timber bridge and could not be reviewed or approved in the DEP appeal referenced in the Plaintiff's Complaint. (Id.). The OADR of the DEP concluded:

> Based on the testimonial and documentary evidence introduced at the Adjudicatory Hearing as discussed above, I recommend that the Department's Commissioner issue a Final Decision: (1) affirming the Department's [Superseding Order of Conditions ("SOC")] denying the Petitioners' original proposed Project because the Petitioners waived any objections to the SOC by submitting a Revised Project Plan to the Department in this appeal; and (2) denying review and approval of the Petitioners' Revised Project Plan pursuant to the Department's Plan Change Policy because the Petitioners' proposed steel bridge alternative is substantially different from their originally proposed timber bridge and increases wetlands impacts to Salt Marsh and Land Containing

Shellfish. As a result, the Petitioners' Revised Project Plan cannot be reviewed and approved in this appeal, but must be submitted to the [Mashpee Conservation Commission] for review pursuant to a new [notice of intent].

(Id.). On June 22, 2017, the Commissioner of the DEP, Martin Suuberg, adopted the Recommended Final Decision and issued a Final Decision.  (Compl. at ¶ 114). Plaintiff concedes that he had a right to file a new notice of intent before the Mashpee Conservation Commission or seek judicial review of the DEP's Final Decision under the Administrative Procedure Act, G.L. c. 30A, § 14.  He chose to file an appeal under the Administrative Procedure Act.  (Id. at ¶ 116).  The appeal is captioned Matthew Haney, trustee v. Dept. of Environmental Protection, et al., BACV Ca. No.: 2017-00340.  The Barnstable Superior Court, on cross motions for judgment on the pleadings, affirmed the DEP's Final Decision. (Memorandum of Decision and Order on parties' Cross-Motions for Judgment on the Pleadings; Attached as Exhibit D).

Plaintiff has appealed the court's judgment affirming the DEP's Final Decision to the Massachusetts Appeals Court.  Matthew Haney, trustee v. Department of Environmental Protection, et al., 2019-P-1395.

As admitted in the Complaint, Plaintiff has not submitted a notice of intent application with the Mashpee Conservation Commission for the construction of a steel bridge.  (Compl. at ¶¶ 116, 178).

E.    Plaintiff's 2018 Applications for Variance

On November 9, 2018, Plaintiff filed three applications for zoning variances to allow construction of one single family home on the Subject Property: (i) variance from requirement for frontage on a street, Mashpee Code Sec. 174-12, (ii) variance from frontage for fire department access, Mashpee Code Sec. 174-32, and (iii) variance from 150 foot length of frontage requirement, Mashpee Code Sec. 174-31.  (Id. at ¶ 132). A public hearing was held on December 12, 2018 before the ZBA.  (Id. at ¶ 138). Attorney Kate Connolly went into executive session prior to the ZBA hearing.  (Id.).  Plaintiff claims the executive session violated the Open Meeting Law, G.L. c. 30A, §§ 18-25.  (Id. at ¶ 139). Plaintiff claims Attorney Connolly spoke in opposition to Plaintiff's variance request.  (Id.).  The Director of Natural Resources for the Tribe told the ZBA that granting the variance would violate the 2008 IGA.  (Id. ¶ 140). The ZBA

denied the application for variance.  (Id. at ¶ 143).  The ZBA filed three separate written decisions with Town Clerk on December 20, 2018.  (Id. at ¶ 144).

Plaintiff admits he did not apply for a variance for the steel bridge proposal.  (Id. at ¶ 133).

On January 8, 2019, Plaintiff filed an appeal, pursuant to M.G.L. c. 40A, § 17, of the three decisions of the Mashpee Zoning Board of Appeals filed on December 20, 2018.  (See Matthew Haney, Trustee v. Mashpee ZBA, BACV Ca. No.: 1972CV012; Attached as Exhibit E).

At the time of filing, the previously filed Emmeluth v. Mashpee ZBA matter was still ongoing. Thus, Plaintiff and the Defendants to that action filed a *Joint Motion to Consolidate Case with Superior Court Docket No. 1972CV00012 And To Continue The Pre-Trial Conference Scheduled for February 1, 2019*.  (Attached as Exhibit F).  In the joint motion filed by the Plaintiff, the following summary of all then pending litigation was included:

> The Gooseberry Island Trust owns a 3.9+/- acre island known as "Gooseberry Island." The island is located in Popponesset Bay in Mashpee, approximately 80 feet offshore from the end of Punkhom Point Road.

> In 2013, the Gooseberry Island Trust applied to the Mashpee Zoning Board of Appeals ("Board") for variances from three provisions of the Mashpee Zoning Bylaw that are necessary to make the island eligible for a building permit:

> a.      Section 1 74-12 - which requires buildings to be on lots which front upon a street;

> b.      Section 174-31 - which requires the Property to have 150 feet of frontage on a street; and

> c.      Section 174-32 - which requires the Property to have an unobstructed paved access roadway within 150 feet of the furthest point of any building on the Property.

> After a hearing, the Board denied the applications citing, inter alia, concerns with public safety due to the lack of vehicular access to the island.

The Trust appealed the denial decision to the Barnstable Superior Court. That appeal is the instant action: Docket No. BACY 2013-00579 entitled <u>Robert D. Emmeluth, Trustee of the Gooseberry Island Trust v. Mashpee Zoning Board of Appeals</u>.[6]

In an effort to address the reasons that the Board gave for its denial decision, the Trust thereafter prepared plans for a single-lane bridge that would extend from the end of Punkhorn Point Road to Gooseberry Island and provide vehicular and pedestrian access.

The bridge requires wetlands permits. Accordingly, Gooseberry Island Trust submitted an application for wetlands permits to the Mashpee Conservation Commission.  After holding hearings, the Commission denied the Trust's application. The Trust appealed that denial decision to the DEP. An adjudicatory hearing was held which resulted in a decision that was unfavorable to the Trust. The DEP's decision was appealed pursuant to M.G.L. c. 30A and the appeal is pending in Barnstable Superior Court action entitled: <u>Matthew Haney. Trustee of Gooseberry Island Trust, et al. v. Massachusetts Department of Environmental Protection</u>, Docket No. 1772CV00340. The Trusts served their Motion for Judgment on the Pleadings in that matter on August 31, 2018. All opposition briefs are due to be served on February l, 2019 and the motion package will thereafter be filed with the Court.

On November 9, 2018, while the appeal of the wetlands permits for the bridge remains pending, the Trust submitted a new application for variances to the Mashpee Zoning Board of Appeals seeking relief from the same three provisions of the Zoning Bylaw:

a.      Section 174-12 - which requires buildings to be on lots which front upon a street;

b.      Section 174-31 - which requires the Property to have 150 feet of frontage on a street; and

c.      Section 174-32 - which requires the Property to have an unobstructed paved access roadway within 150 feet of the furthest point of any building on the Property.

The Trusts proposed, as part of their application, the construction of the single-lane bridge that will span the channel and provide pedestrian and vehicular access to the Island, including access by the Town's emergency response vehicles.

FN1: The inclusion of the proposal to construct this bridge is subject to the Trusts prevailing in their Chapter 30A appeal of the DEP's decision. As it presently stands, the Trusts do not have wetlands permits for the bridge. Thus, the proposal of the bridge cannot be implemented unless the Trusts prevail in their appeal of the DEP's decision.

---

[6] A copy of the Docket in <u>Emmeluth v. Mashpee ZBA</u> is attached hereto as Exhibit G.  The docket reflects an ongoing M.G.L. c. 30A appeal of the ZBA's denials in 2013 and 2018.

The Trusts represented to the Board of Appeals that the ability to construct the proposed bridge depended upon a successful outcome of the litigation concerning the wetlands permits for the bridge, and that, without a wetlands permit, the bridge could not be built.

After holding a hearing on the application, the Board denied the request for variances. The ZBA declined to issue variances, in part, based upon conditional outcomes in other forums.

The Trusts appealed. This appeal is set forth in an action entitled Matthew Haney, Trustee of Gooseberry Island Trust, et al v. Mashpee Zoning Board of Appeals, Docket No. 1972CV00012.

(See Exhibit E, pgs. 2-4).

F.    Punkhorn Point Road Litigation

As detailed above, the Mashpee Wampanoag Tribe are abutters to the Punkhorn Point Property and the Subject Property. On May 23, 2007, well prior to any of the Plaintiff's applications for variances, the Mashpee Wampanoag Tribe ("Tribe") obtained federal recognition and the Defendant Town of Mashpee entered into negotiations for the execution of an Inter-Governmental Agreement with the Tribe governing the relationship between the Town and the Tribe.  The IGA requires the Town support the Tribe's claim to any right, title or interest of the Town in [4.6 acres of Punkhorn Point as reflected in Map 106 and 8 acres of Popponesset Bay, also as reflected in Map 106] for continued aquaculture/shellfish farm use and/or to support steps necessary for these parcels to be taken into trust for this purpose.  Map 106 reflects the waterways surrounding Gooseberry Island, but not the island itself. (See Inter-Governmental Agreement attached as Exhibit A at Pgs. 16-17).

Around the time of the Plaintiff's 2013 ZBA applications and 2014 notice of intent application to build a bridge over Punkhorn Point, the Tribe sent a letter to the Mashpee Town Manager and Mashpee Town Counsel stating:

Pursuant to Section 1.a of the IGA, the Town agreed to convey the Town's interest, if any, in the "Punkhorn Point Site" consisting of 4.6 acres surrounding Gooseberry Island, as depicted on Exhibit B and the accompanying map, and described as the "Mashpee Wampanoag Tribal

11

Council Shellfish Aquaculture Areas." See Page 16 and 17 of the IGA. In the alternative, should the Town not hold fee title to the site, the Town agreed that it "shall support all necessary steps to have those Parcels acquired in trust for the Tribe including any local approvals or state legislation." See Section 1.b of the IGA."....... "In accordance with the provisions of the IGA, the Tribe hereby respectfully requests that the Town—by and through the Town Manager, Town Attorney and Board of Selectman—aid and support the Tribe in its opposition to the proposed bridge and any other development on Gooseberry Island that would negatively impact the Tribe's shellfish grant. Further, the Tribe urges the Town to take the necessary steps to convey the "Mashpee Wampanoag Tribal Council Shellfish Aquaculture Areas" to the Tribe or, in the alternative, support the Tribe in its efforts to acquire the area as tribal lands.

(Compl. at ¶ 77).

On October 3, 2014, the Town of Mashpee filed a Complaint in Land Court against the SN Trust challenging the SN Trust's title to the land at the end of Punkhorn Point Road.  (Compl. at ¶ 77; see also docket of <u>Town of Mashpee v. Emmeluth</u>, 14 MISC 486868; Attached as Exhibit H).  At the same time, on October 23, 2014, other abutters to the Punkhorn Point Road Property filed <u>Wolpe, et al. v. Emmeluth</u>, 14 MISC 487495; docket attached as Exhibit I).  The two cases were consolidated.  See <u>Wolpe v. Haney</u>, 27 LCR 497 (Oct. 10, 2019).

Plaintiff frames his allegations as if the Town was asserting a claim to the Trust's parcel at the end of Punkhorn Point Road, when, in reality, the Petition to Try Title regarded the salt marsh area over which Plaintiff intended to construct a bridge, a parcel deeded to the Town in a deed recorded with the Barnstable Registry of Deeds ("Deeds") on March 23, 1955 at Book 903, Page 57 in the vicinity of Gooseberry Island.  (See Town of Mashpee v. Emmeluth, Trustee of SN Trust, Petition to Try Title Under G.L. c. 240, § 1; Attached as Exhibit J).  Plaintiff alleges in his Complaint that in a joint sketch submitted in that action to identify the land that the parties sought to claim title, the Town placed the northern limit of its claims far to the south the end of Punkhorn Point Road and the claims of the other parties, with no overlap *demonstrating that the Town knew that it had no viable claim of title to the land at the end of Punkhorn Point Road*.  (<u>Id.</u> at ¶ 119).

On July 19, 2017, the SN Trust asked the Town to settle.  (<u>Id.</u> at ¶ 120).  The Town would only consider a global settlement.  (<u>Id.</u> at ¶ 121).  Plaintiff alleges that on April 18, 2018, the Mashpee Board

of Selectmen confirmed that the Town had fulfilled its obligations necessary under the IGA.  (Id. at ¶
122).

On October 10, 2019, the Land Court issued judgment in the consolidated cases regarding the
land at the end of Punkhorn Point Road.  (Id. at ¶ 148).  The Judgment is summarized by the Land Court
as follows:

> For the foregoing reasons, I find and rule that the plaintiffs [Robert and Michelle Wolpe] have
> record title to the Pocknet marsh set-offs, whose northern boundary aligns with the northern
> boundary of the Elijah W. Pocknet 15 a[cre] parcel as shown on Ex. E (i.e., it is a straight line
> extension of that boundary over to the water), and whose southern boundary aligns with the
> southern boundary of the Elijah W. Pocknet 15 a[cre] parcel as shown on Ex. E (i.e., it is a
> straight line extension of that boundary over to the water, such that if further extended it would
> cross the mouth of the Mashpee River to the tip of Mashpee Neck). The section derived from the
> Leah Pocknet marsh set-off (whose northern boundary I cannot determine on the evidence in this
> record) is owned 93.7% by the plaintiffs and 6.3% by Stephen Orange, Crystal Orange (Faber),
> and Mary Grant as heirs of Leah Pocknet, free and clear of any claims by the SN Trust or the
> Town.
>
> I find and rule that the SN Trust has record title to the Elizabeth Coombs marsh set-off, whose
> northern, southern, and other boundaries are as shown on Ex. C (the area shown in yellow as
> claimed by the Trust), and that neither the plaintiffs, the plaintiffs' parties-in-interest Stephen
> Orange, Crystal Orange (Faber), nor the Town have record title to any of that land.
>
> I find and rule that James Atkins Jr. and John Weltman, the owners of #80 Punkhorn Point Road,
> do not have adverse possession title to any of the marshland owned of record by the Trust as
> shown on Exhibit C. However, I find and rule that Robert Wolpe and Michelle Wolpe, the owners
> of #84 Punkhorn Point Road, have adverse possession title to the area of the marsh over which
> their dock actually passes, but to no other part of the Trust's marshland.
>
> Finally, I find and rule that whatever land the Town owns south of the southern boundary of the
> Trust's land as shown on Ex. C, it owns that land free and clear of any adverse claims by the
> plaintiffs, the plaintiffs' parties-in-interest Stephen Orange, Crystal Orange (Faber), and Mary
> Grant, or the Trust. The evidence was insufficient for me to determine whether, in fact, the Town
> actually owns any of that land, or where its southern boundary might be, so no adjudication is
> made of that ownership, if any.

Wolpe v. Haney, 27 LCR 497, 512 (2019).  The judgment is consistent with the joint sketch offered by
the parties by stipulation to show the division of land at issue.  (Id.).  The joint sketch is Exhibit C to
Wolpe v. Haney, 27 LCR 497 (2019).

Plaintiff alleges that the Town appealed the Land Court decision. (Compl. at ¶ 150). The Appeals Court docket is attached hereto as Exhibit D. It shows that Wolpe, Weltman, and Atkins filed an appeal and the Trustees of SN Trust cross-appealed. (See Exhibit K). The docket does not designate the Town as an Appellant or an Appellee and that the Town made no filings. (Id.).

G.    Current Posture

As it stands, the SN Trust has record title to the Elizabeth Coombs marsh set-off, whose northern, southern, and other boundaries are as shown in yellow at pg. 29 (Ex. C) to Wolpe v. Haney, 27 LCR 497, 512 (2019).

As Plaintiff acknowledges in his filing, variances from the Mashpee Code are needed in order for a single family home to be constructed on the Subject Property. (Compl. at ¶¶ 132-147). A single family home cannot be constructed by right. (Id.). Indeed, Plaintiff has alleged that the issuance of variance is generally discretionary and no person is entitled to a variance. (Id. at ¶ 134).

Plaintiff's variance denials are pending litigation, as more fully discussed above.

Plaintiff has not submitted a notice of intent application regarding the steel bridge proposal discussed in the DEP appeal.

In August 2020, the Mashpee Board of Selectmen voted to add an article on the October Town Meeting warrant to authorize the Town to purchase Gooseberry Island/Subject Property. (Compl. at ¶ 160). The Finance Committee voted against the Article. (Id. at ¶ 162). The article was placed on the warrant and Town Meeting voted to indefinitely postpone a vote on Article 20. (Id. at ¶ 166). Plaintiff further alleges that at the November 12, 2020 Mashpee Conservation Committee meeting, the Chairman "criticized the Commission for failing to endorse Article 20 before the October 2020 Town Meeting and the Commission then voted to endorse the acquisition of the Subject Property by eminent domain." (Id. at ¶ 167). The Mashpee Community Preservation Committee voted 5-3-1 to authorize the Committee to acquire an appraisal of the Subject Property.

14

III.   **STANDARD OF REVIEW**

As the Court is well familiar, under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A mere recital of the legal elements supported only by conclusory statements is not sufficient to state a cause of action. *Id.* at 555.

IV.   **ARGUMENT**

   A.   **The Plaintiff's Count I Is Barred as G.L. c. 40A, §§ 17 Provides The Exclusive Right to Relief Upon Appeal of a Decision of a Zoning Board of Appeals.**

Land use determinations generally, or specifically with regard to requests for variances such as those applied for by the Plaintiff, are properly determined in the first instance by the Zoning Board of Appeals.  If the Plaintiff is aggrieved by a decision of the Zoning Board of Appeals, it is statutorily required to file an appeal to the Superior Court.  *See* M.G.L. c. 40A, § 17  M.G.L. c. 40A, § 17 specifically states in part:

"Any person aggrieved by a decision of the board of appeals or any special permit granting authority or by the failure of the board of appeals to take final action concerning any appeal, application or petition within the required time or by the failure of any special permit granting authority to take final action concerning any application for a special permit within the required time, whether or not previously a party to the proceeding, or any municipal officer or board may appeal to the land court department, the superior court department in which the land concerned is situated or, if the land is situated in Hampden county, either to said land court or, superior court department or to the division of the housing court department for said county, or if the land is situated in a county, region or area served by a division of the housing court

15

department either to said land court or superior court department or to the division of said housing court department for said county, region or area, or to the division of the district court department within whose jurisdiction the land is situated except in Hampden county, by bringing an action within twenty days after the decision has been filed in the office of the city or town clerk. If said appeal is made to said division of the district court department, any party shall have the right to file a claim for trial of said appeal in the superior court department within twenty-five days after service on the appeal is completed, subject to such rules as the supreme judicial court may prescribe. Notice of the action with a copy of the complaint shall be given to such city or town clerk so as to be received within such twenty days. The complaint shall allege that the decision exceeds the authority of the board or authority, and any facts pertinent to the issue, and shall contain a prayer that the decision be annulled. There shall be attached to the complaint a copy of the decision appealed from, bearing the date of filing thereof, certified by the city or town clerk with whom the decision was filed.

Courts have long been "mindful of the general proscription that federal courts should not become zoning boards of appeal to review non-constitutional land use determinations." *Zahra v. Town of Southold*, 48 F.3d 674, 679-90 (2d Cir. 1995). As one Court of Appeals has stated: "In enacting the FHA, Congress clearly did not contemplate abandoning the deference that courts have traditionally shown to local zoning codes." Bryant Woods Inn v. Howard County, Md., 124 F. 3d 597, 603 (4th Cir. 1997). A local government's decision to enact zoning laws that bear a rational relationship to the public good involves the exercise of discretion, which is "not a judicial function." Village of Belle Terre v. Boraas, 416 U.S. 1, 6-8 (1974).

Section 7 of the Zoning Act puts the power of enforcement in the first instance in whomever or whichever board the local ordinance or by-law designates shall be in charge of

16

enforcement of zoning.  In Mashpee, with regard to the variances requested by the Plaintiff, that entity is the Zoning Board of Appeals in the first instance. Recognizing the applicability of G.L. c. 40A, Plaintiff twice availed itself of the Chapter 40A statutory review remedy and appealed the Mashpee ZBA's variance denial decisions (2013 and 2018) pursuant to M.G.L. c. 40A, § 17 contesting and seeking the reversal of the denial of said variances.

That process has not yet been exhausted, as the judicial appeals are still pending, and the state courts should be afforded deference and the ability to complete that state enacted process for resolving zoning determinations. (See Exhibits I and J).  Plaintiff's current claims are contradictory to that process.  This issue also goes to the lack of ripeness of the Plaintiff's claims.

**B.**      **Both Claims Asserted in the Complaint Are Not Ripe For Adjudication.**

1.      Plaintiff Has Not Applied For A Variance Or A Notice Of Intent Application To Build Steel Bridge

In seeking a declaratory judgment that the variance denials are unconstitutional, the Plaintiff must cross the threshold requirement imposed by Article III, Section 2, of the federal Constitution and show that an "actual controversy" exists. Steffel v. Thompson, 415 U.S. 452, 458, 39 L. Ed. 2d 505, 94 S. Ct. 1209 (1974). To do so, the plaintiff must demonstrate that the denial of variances[7] constituted a taking without just compensation in violation of the fifth amendment. See Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc., 452 U.S. 264, 295, 69 L. Ed. 2d 1, 101 S. Ct. 2352 (1981); Agins v. Tiburon, 447 U.S. 255, 260, 65 L. Ed. 2d

---

[7] Plaintiff's claim of a justiciable controversy regarding the "delegation of its decision making authorities to the Mashpee Wampanoag Tribe" (Compl. at ¶ 184) relates only to Plaintiff's inclusion of settlement negotiations in his Complaint.  He purports to support his claim with "upon information or belief" allegations of what he believes was communicated between client and counsel in executive sessions and makes no allegations in fact of an actual delegation of authority because none has occurred.  Plaintiff's claim of a justiciable controversy regarding the "Defendants' filing and continue (sic) baseless litigation claiming ownership of land" also relates only to Plaintiff's conclusory allegations and legal conclusions of prior litigation.  Defendants, through this memorandum, have incorporated the actual decision of the Land Court matter the Plaintiff references which does not support the Plaintiff's conclusory allegations and legal conclusions.

106, 100 S. Ct. 2138 (1980).  The same inquiry applies equally to Plaintiff's inverse condemnation claim under state law.  Commonwealth v. Blair, 60 Mass. App. Ct. 741, 742 (2004).  In this situation, the Plaintiff cannot cross the jurisdictional threshold.

It is apodictic that, where a state law or municipal ordinance contains provisions for administrative relief, an as-applied claim can only arise when a property owner has actually sought, and been denied, a permit. See, e.g., Pennell v. San Jose, 485 U.S. 1, 10, 99 L. Ed. 2d 1, 108 S. Ct. 849 (1988); MacDonald, Sommer & Frates v. County of Yolo, 477 U.S. 340, 348-53, 91 L. Ed. 2d 285, 106 S. Ct. 2561 (1986); Tenoco Oil Co. v. Department of Consumer Affairs, 876 F.2d 1013, 1026 (1st Cir. 1989). It is only at this point that one's property is meaningfully burdened by the law, bringing an actual controversy between the owner and the government into being.  Gilbert v. Cambridge, 932 F.2d 51, 57 (1st Cir. 1991). Where the Plaintiff is making an "as applied" challenge to a land use determination that has not actually been rendered with finality, the claim is not ripe and must be dismissed.  Id.

Plaintiff's claim hinges upon the assertion that the steel bridge "would address the two reasons for denial because the steel bridge would not have piles in the salt marsh and would allow more light to penetrate to the salt marsh." (Compl. at ¶ 107).  Yet, Plaintiff readily admits it has not followed the process of filing a notice of intent application with the Mashpee Conservation Commission for the construction of any such steel bridge.  Indeed, the Trust makes this admission even as the DEP Final Decision and Barnstable County Superior Court reviewing that decision indicated to the Plaintiff that his steel bridge alternative was not considered in their respective reviews because it was not properly submitted to the Mashpee Conservation Commission in the first instance.

There is an additional ripeness issue involving Plaintiff's inverse condemnation claim, addressed more fully in Section C below.

18

It is abundantly clear, both of Plaintiff's claims are not ripe for adjudication by this Court.

 2. A Steel Bridge Application Is Not Futile

In Northern Heel Corp. v. Compo Indus., Inc., 851 F.2d 456, 461 (1st Cir. 1988), the First Circuit stated in an unrelated context that "the law should not be construed idly to require parties to perform futile acts or to engage in empty rituals." Here, the Plaintiff contends he should be compensated in the amount of $5,500,000.00 because his land has been taken and that the application process for his steel bridge alternative to permit him to construct a single-family dwelling would be an exercise in futility.  The First Circuit also cautioned against such conclusory averments such as "such permits are virtually never granted," particularly where no application has been made.  Gilbert, 932 F.2d at 60.

In the First Circuit's judgment, recognizing a stringently cabined futility exception is consistent with familiar doctrine suggesting that exhaustion of administrative remedies will not ordinarily be required where the hierarchs have made it quite plain that the relief in question will be denied, see City Bank Farmers Trust Co. v. Schnader, 291 U.S. 24, 34, 78 L. Ed. 628, 54 S. Ct. 259 (1934); White Mountain Apache Tribe v. Hodel, 840 F.2d 675, 677 (9th Cir. 1988) ("administrative review may be futile by virtue of a preannounced decision by the final administrative decision-maker"), or where a party has been denied access to administrative remedies, see, e.g., Christopher W. v. Portsmouth School Comm., 877 F.2d 1089, 1096-97 (1st Cir. 1989), or where there is "objective and undisputed evidence of administrative bias," see, e.g., White Mountain Apache Tribe, 840 F.2d at 677-78.

The mere possibility, or even the probability, that the responsible agency may deny the permit is not enough to trigger the excuse. See United States v. Felt & Tarrant Mfg. Co., 283 U.S. 269, 273, 75 L. Ed. 1025, 51 S. Ct. 376 (1931); Randolph-Sheppard Vendors of America v.

Weinberger, 254 U.S. App. D.C. 45, 795 F.2d 90, 106 (D.C. Cir. 1986). To come within the

exception, a sort of inevitability is required: the prospect of refusal must be certain (or nearly so).

See James v. United States Dept. of HHS, 263 U.S. App. D.C. 152, 824 F.2d 1132, 1138-39

(D.C. Cir. 1987) (administrative remedy futile where certainty of adverse decision exists);

Randolph-Sheppard, 795 F.2d at 105 (similar); see also Southern Pacific, 922 F.2d at 504

(futility exception inapplicable unless manner of rejection of earlier application "makes it clear

that no project will be approved").  This burden applies to the pleadings stage of the case.

Gilbert, 932 F.2d at 62.

      None of this applies to the Plaintiff's claims, despite his efforts to manufacture a futility

argument.  When Gooseberry Island was purchased in 2011 for $1,315,000, it was abundantly

clear that the Subject Property was an island, and that any development thereon would be subject

to applicable local zoning requirements and local/ state environmental laws and regulations. As

the Complaint makes clear by comparison to Popponesset Island, a bridge is required to access

the property.  Popponesset Island has a bridge which was constructed pursuant to a 1908 Act and

1909 License.  As of 2011, when Gooseberry Island Trust purchased Gooseberry Island, no

bridge had been constructed.  The need for a bridge, however, was clear, even in the Complaint's

allegations.

      In 2013, in the first round of variance applications, no bridge proposal was made.  The

ZBA's denials clearly identified the lack of access to the island and lack of adequate frontage on

a street as a basis for the denials. The Trust thereupon proceeded to file a notice of intent with the

Mashpee Conservation Commission for the construction of a bridge using wood timbers.  After

consideration and evaluation of the projects impacts on the protected area, the Conservation

Commission denied the wood timber bridge application without prejudice and the Trust

petitioned the Massachusetts Department of Environmental Protection to review the denial.  The

Mass DEP affirmed the denial finding the timber bridge would have would destroy 17.1 square feet of salt marsh and that the shading impacts from the bridge decking would have an adverse effect on the productivity of the salt marsh. The Trust chose to proceed by requesting the DEP issue a variance from the Wetland Protection Act, and it appealed the DEP' s denial superseding order of conditions by requesting an adjudicatory hearing with the Office of Appeals and Dispute Resolution ("OADR") pursuant to 310 CMR 10.05(7)(j)(2).

Midstream, the Trust made an alternative steel construction proposal which was never submitted to the Mashpee Conservation Commission. The OADR affirmed the denial of the timber bridge on the merits and further stated that it could not review the Trusts proposed steel bridge alternative because it was not properly submitted. To this date, the steel bridge alternative, while touted by the Plaintiff as a viable solution to the ZBA's concerns, has not been reviewed on its merits by the Mashpee Conservation Commission in the first instance or the Mass DEP to the extent such superseding review would even be necessary, because the Plaintiff has not submitted it for review.

Plaintiff's 2018 applications for variances were made with full knowledge of the state of the timber bridge proposal and unripe steel bridge alternative. Nothing about the ZBAs review or decision-making regarding Plaintiff's 2018 applications for variances brings this case within the narrow futility exceptions recognized in this Circuit.

Plaintiff's reference to settlement negotiations and the Town's alleged desire to effectuate a global settlement which involves the interests of abutters and a federally recognized Tribal government does not change the process, they are statutorily a part of the processes.[8]

---

[8] M.G.L. c. 40A, § 11 requires notice to abutters of land directly opposite and those within three hundred feet of the property line. M.G.L. c. 131, § 40 (Wetlands Protection Act) requires any person filing a notice of intention with a conservation commission shall at the same time given written notification to all abutters within one-hundred or one-thousand feet of the property line or project site, depending on the scope of the project.

Plaintiff must submit his steel bridge alternative for review to have the merits of such a proposal reviewed. He cannot support a claim by conclusory averring that his steel bridge alternative would ultimately be denied and, thus, all economic benefits of the land that was purchased has been taken from him. The claim is backwards. As an exercise in logic, assume for the sake of argument the entry of a Plaintiff's final takings judgment in this case, nothing would prevent Plaintiff from thereafter filing a notice of intent for his steel bridge alternative. This, in and of itself, shows the deficiency and the lack of ripeness of the Plaintiff's takings claim.

Finally, if the Plaintiff's allegations in paragraph 107 are correct, and the DEP advised that the Trust that it would view the steel bridge alternative as addressing the two reasons for denial of the timber bridge, the Plaintiff's claims that regulations have amounted to a taking when the steel bridge project was never submitted for review fail for this reason as well.

**D**.   **Plaintiff's Inverse Condemnation Claim (Count II) Must Be Brought In The First Instance In State Court Before A Fifth Amendment Takings Claim Can Be Pursued**

There is a further reason why the takings claim is not viable: the Trust has not sought compensation through the procedures Massachusetts has provided for that purpose. The Fifth Amendment provides in pertinent part that "private property shall not be taken for public use, without just compensation." This provision "is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 315, 96 L. Ed. 2d 250, 107 S. Ct. 2378 (1987) (hereinafter, "First Lutheran"). For that reason, so long as the State provides an adequate process for obtaining compensation, and resort to that process holds out some realistic promise of

22

yielding just compensation, an owner of property has no cognizable claim against the State in respect to an alleged confiscation. See Williamson, 473 U.S. at 194-97; Ochoa, 815 F.2d at 817; Culebras Enterprises Corp. v. Rios, 813 F.2d 506, 514-15 (1st Cir. 1987).  As the Williamson Court explained:

> . . . because the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action.

The First Circuit applied this same analysis in Gilbert v. Cambridge, supra. The court cited Williamson County Regional Planning Comm'n v. Hamilton Bank and held:

> The resolution of this previously unanswered question, coupled with the [Supreme] Court's unambiguous declaration that there can be "no constitutional violation" under the Takings Clause until just compensation has been denied (and that, therefore, due to the nature of the constitutional right, property owners must resort to available state compensation procedures before suing under section 1983), Williamson, 473 U.S. at 194 n.13, leaves no doubt that, so long as the State provides an adequate process for securing compensation, federal equitable intervention in advance of resort to that procedure is premature.

Gilbert, 932 F.2d at 64.  The First Circuit proceeded to hold that an inverse condemnation claim, for which the State has provided a procedure under M.G.L. c. 79, § 10, is an adequate state remedy that bars proceeding with a Fifth Amendment takings claim in the first instance.  Id. Indeed, Plaintiff's Count II in this case is an inverse condemnation claim, demonstrating the Trust's apparent belief in the adequacy of the remedy.  Nevertheless, the two claims cannot be maintained contemporaneously, the inverse condemnation procedure is a State provided remedy which must be exhausted in state court before a constitutional takings claim may be brought, if at all.

**D.**      **With Respect To Analyzing The Merits Of The Claims (See Section E Herein) The Rooker Feldman Doctrine Bars Plaintiff's Complaint Challenge To The Barnstable County Superior Court's Judgment Affirming the Massachusetts Department of Environmental Protection's Final Decision**

Under the so-called Rooker–Feldman doctrine, "federal courts are precluded from exercising appellate jurisdiction over final state-court judgments." Lance v. Dennis, 546 U.S. 459, 465 (2006). The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., Inc., 544 U.S. 280, 284 (2005)

In the present case, Plaintiffs' takings claim is a collateral attack of the Barnstable Superior Court's Judgment affirming the DEP's Final Decision.  So is Plaintiff's inverse condemnation claim.  Specifically, the Superior Court and DEP declined to review the merits of Plaintiff's steel bridge alternative because Plaintiff did not appropriately file a notice of intent application with the Mashpee Conservation Commission.  A final decision has not been rendered.  Plaintiff now attempts to unwind the holding and legal effect of the two Judgments in this regard by asking this Court to permit him to proceed on a theory that the steel bridge alternative was considered and rejected or is otherwise a *fait accompli*.  (See Compl. at ¶¶ 178-179).  That is not what occurred and not what was decided.

The court lacks jurisdiction to rule upon Plaintiff's constitutional claims under the Rooker–Feldman doctrine to the extent Plaintiff attempts to claim the Trust has exhausted administrative remedies available to it because the Superior Court and DEP both found otherwise.

24

E.      **Even Assuming Plaintiff's Claims Were Ripe, They Still Fail**

"The Takings Clause of the Fifth Amendment, applicable to the States through the

Fourteenth Amendment, prohibits the government from taking private property for public use

without just compensation." Palazzolo v. Rhode Island, 533 U.S. 606, 617, 121 S. Ct. 2448, 150

L. Ed. 2d 592 (2001) (involving a landowner's challenge to the state's denial of his land

development proposals, pursuant to wetlands regulations) (citations omitted). "Where a

regulation places limitations on land that fall short of eliminating all economically beneficial use,

a taking nonetheless may have occurred, depending on a complex of factors including the

regulation's economic effect on the landowner, the extent to which the regulation interferes with

reasonable investment-backed expectations, and the character of the government action." Id.

(citing Penn Central Transp. Co. v. City New York, 438 U.S. 104, 124, 98 S. Ct. 2646, 57 L. Ed.

2d 631 (1978)).

Plaintiff acquired Gooseberry Island in 2011.  At the time of acquisition, it was clear that

variances would be required to construct a single-family residence which included the necessary

construction of a bridge.  Plaintiff's Complaint candidly admits that the issuance of a variance is

generally discretionary and no person is entitled to a variance.  (Compl. at ¶ 134).  This

admission is echoed in the law.  Massachusetts Appeals Court has affirmed "[n]o person has a

legal right to a variance and they are to be granted sparingly." Guiragossian v. Board of Appeals,

21 Mass. App. Ct. 111, 115 (1985) citing Damaskos v. Board of Appeal of Boston, 359 Mass.

55, 61 (1971), and cases cited.  Yet, Plaintiff structures his claims as though the Trust had a right

to build a single-family residence on Gooseberry Island at the time of Plaintiff's acquisition and

that land use regulations have deprived him of said right.  It is simply not the case.

Further, at the time of acquisition, Gooseberry Island had been designated by the Town of

Mashpee 1998 Local Comprehensive Plan as Lands of Conservation and Recreation Interest and,

as recently as 2008, classified as Private Land of Conservation Interest in the Town's Open

Space, Conservation and Recreation Plan.[9]  The Intergovernmental Agreement identifying the

Town's obligations to the Mashpee Wampanoag Tribe and the salt marsh surrounding

Gooseberry Island existed as of 2008.

Not despite this posture but considering it, Gooseberry Island Trust acquired Gooseberry

Island in 2011 for an amount of $1,315,000.00.  The application of the land use regulations

Plaintiff challenges through its Complaint have not taken any interest in the property away from

the Plaintiff.  The Subject Property is in the same regulatory position now as it was at the time of

its acquisition.

This Court's recent decision in the matter of Zarba v. Town of Oak Bluffs, No. 19-11368-

LTS, 2020 U.S. Dist. LEXIS 143705 (D. Mass. Aug. 11, 2020), is illustrative of the issues

relevant to the instant claims.  The type of taking Plaintiff alleges, here, is confined to

"regulatory actions that are functionally equivalent to the classic taking in which [the]

government directly appropriates private property or ousts the owner from his domain[,]" with

the inquiry focusing on "the severity of the burden that [the] government imposes upon private

property rights." Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 539, 125 S. Ct. 2074, 161 L. Ed.

2d 876 (2005). "[A] regulatory taking occurs where 'government regulation of private property

[is] so onerous that its effect is tantamount to a direct appropriation or ouster.'" Rancho de

Calistoga v. City of Calistoga, 800 F.3d 1083, 1088-89 (9th Cir. 2015) (quoting Lingle, 544 U.S.

at 537). "[T]he test for how far [i]s 'too far' require[s] an 'ad hoc' factual inquiry. That inquiry

---

[9] Plaintiff includes a section of his Complaint entitled "Renewed Attempt to Take the Island by Eminent Domain" (Compl. at ¶¶ 160-173) to suggest a new potential of a taking of Gooseberry Island.  However, the allegations make clear that no such taking has, in fact, occurred.  Further, even if it had occurred, which it has not, eminent domain is not unconstitutional.  A physical taking does not violate the Constitution unless just compensation is denied. See Deniz v. Municipality of Guaynabo, 285 F.3d 142, 146 (1st Cir. 2002) (quoting Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 194, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985)).

require[s] considering factors such as the economic impact of the regulation, its interference with reasonable investment-backed expectations, and the character of the government action." Horne v. Dep't of Agric., 576 U.S. 351, 360, 135 S. Ct. 2419, 192 L. Ed. 2d 388 (2015) (quoting Penn Cent. Transp. Co. v. New York, 438 U.S. 104, 124, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978)).

Under this framework, as in Zarba, Plaintiff's regulatory takings claims are subject to dismissal. While the Complaint asserts conclusory allegations about the deprivation of "economically viable" uses of Plaintiff's property, the Supreme Court has held that mere "diminution in the value of property, however serious, is insufficient to demonstrate a taking." Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal., 508 U.S. 602, 645, 113 S. Ct. 2264, 124 L. Ed. 2d 539 (1993); see also Penn Cent., 438 U.S. at 131 (noting that courts "uniformly reject the proposition that diminution in property value, standing alone, can establish a 'taking'"). Finally, the government action at issue here—denial of variances which are still pending G.L. c. 30A review in state court and denial of a notice of intent timber bridge application which was affirmed by a state court—is typically given great leeway by courts. Sutton v. Chanceford Twp., 186 F. Supp. 3d 342, 349 (M.D. Pa. 2016) (noting that "[s]tate and local laws affecting land use, including zoning laws, are extended broad latitude under current standards"); see also Miller v. Town of Wenham, 833 F.3d 46 (1st Cir. 2016).

For a second and independent reason, there was not a compensable taking because Plaintiffs cannot demonstrate that the governmental action in this case interfered with "distinct investment-backed expectations." Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 124 (1978).  According to the Court, these must be "reasonable" expectations in order to constitute protected property interests. See id. at 125. In making this determination, the Supreme Court has made it clear that the degree to which the claimant has advance notice of the government action is relevant.  In other words, we must consider a prudent land investor's

27

"reasonable investment-backed expectations" in Gooseberry Island at the time of the Trusts acquisition in 2011.  As discussed throughout, the regulatory scheme applicable to Gooseberry Island is the same now as it was in 2011.  The need for variances and the uncertainty of obtaining variances was clear in 2011.  The Intergovernmental Agreement with the Tribe was in place as of 2011, as were the other abutters.  Plaintiff's Complaint allegations make clear that the constitutional taking claim fails on the merits of the allegations on the reasonable investment-backed expectations test.

## V.     **CONCLUSION**

WHEREFORE, the Defendants Town of Mashpee and the Zoning Board of Appeals of the Town of Mashpee move this Honorable Court to dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,
DEFENDANTS,
Town of Mashpee, Jonathan Furbush, William A.
Blaisedell, Scott Goldstein, Norman J. Gould,
Bradford H. Pittsley, and Sharon Sangeleer,
By its attorneys:


   _/s/ Joseph A. Padolsky_
Douglas I. Louison (BBO #545191)
Email: Dlouison@lccplaw.com
Joseph A. Padolsky (BBO #679725)
Email: Jpadolsky@lccplaw.com
Louison, Costello, Condon & Pfaff, LLP
101 Summer Street
Boston, MA  02110
617-439-0305
FAX: 617-439-0325

Date:  June 30, 2021

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)(2)

Pursuant to Local Rule 7.1(A)(2), counsel for the Defendants, Town of Mashpee, certify that they have conferred with counsel for the Plaintiff and attempted in good faith to resolve or narrow the issues in this motion.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(D), the Defendants request a hearing on this motion.

## CERTIFICATE OF SERVICE

I, Joseph A. Padolsky, hereby certify that on June 30, 2021, I served the foregoing by causing a copy to be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and/or paper copies will be sent to those indicated as non-registered participants.

/s/ Joseph A. Padolsky
Joseph A. Padolsky

29